### SAMUEL H. HORNER *vs.* JAMES T. JOBS.

An injunction staying proceedings in ejectment was granted on a bill setting up loss of title deeds. The answer denied fully all knowledge of deeds alleged to have been lost.

*Held*, that injunction should be dissolved.

A mere formal or technical denial of the charges of the bill is not, as of course, sufficient to dissolve an injunction.

The staleness of the *defendant's* claim, which he was enforcing at law, affords no ground for continuing an injunction against him. It is the claim of the *complainant* to which the equitable defence of a stale claim is applicable.

---

The motion was to dissolve the injunction which had been granted on the filing of the bill.

*Joel Parker*, for defendant.

*J. F. Randolph*, for complainant.

THE CHANCELLOR. The complainant claims to be the owner in fee of a farm, containing 140 acres of land, in the county of Ocean. The farm was conveyed to Fuller Horner, the complainant's father, from *Peter Sexton* and Sarah his wife, by deed bearing date on the 5th of January, 1811. The father continued in possession during his life, and died seized in or about the year 1845, when the title vested, by descent, in the complainant, as his only child and heir at law. The complainant remained in the quiet and undisturbed possession of the land until June, 1858, when the defendant commenced against him, in

the Supreme Court, an action of ejectment to recover some part or share of the premises. The complainant thereupon filed his bill of complaint in this court, alleging a loss or destruction of his title deeds, praying a discovery from the defendant, and an injunction to restrain the proceedings at law. The defendant, having answered the bill, asks a dissolution of the injunction.

The answer, so far as a discovery is sought, is full, direct, and unequivocal. Whether it answers the whole equity of the bill, so as to entitle the defendant to a dissolution of the injunction, is the only matter of inquiry. From the statements of the bill and answer, not controverted, it appears that, in the year 1784, James Sexton, the elder, under whom both parties claim title, died seized of a tract of 211 acres, including the farm in question. He left two sons and four daughters. The sons divided the land between them, and on the 3d of June, 1803, executed mutual releases. Peter, one of the sons, under whom the complainant claims, took the 140 acres now in controversy, the residue of the tract going to the other son. Rebecca, one of the daughters of James Sexton, in the year 1797, married Richard Jobs, and by him had one son, the defendant, who was born on the 25th of August, 1798. She died in 1800, leaving the defendant her heir at law, to whom her real estate descended, subject to the estate of his father, Richard Jobs, as tenant by the curtesy. The father survived the mother fifty years, and died on the 20th of March, 1850. In 1858, the defendant commenced his action of ejectment for the recovery of his mother's interest in the lands in question as one of the heirs of James Sexton, and prosecuted the same until restrained by the injunction of this court.

The bill charges, upon information and the belief of the complainant, that Peter Sexton, before the conveyance by him to the complainant's father, and about the time of the division of the land between himself and his brother, purchased all the right of his sisters, and took

from them, respectively, good and sufficient titles. The bill further charges, that after the death of Rebecca, her husband, Richard Jobs, conveyed her share, all his own interest, and the interest of his son (the defendant) to Peter Sexton, in consideration of $480, with covenants of general warranty; and in order the better to secure Sexton, the said Richard Jobs, together with his father, James Jobs, about the time of the conveyance to Sexton, gave him a bond of indemnity against any claim that James Jobs, the present defendant, might ever set up against the property; and that, subsequently, James Jobs, the grandfather, Richard Jobs, the father, and James S. Jobs, the defendant (he acting by attorney), executed a deed, with covenants of warranty, transferring all their interest in the estate of the said Rebecca to Peter Sexton ; that the defendant afterwards gave to the grandfather a release of all his interest in the estate; that the papers of the grandfather subsequently came into the possession of the defendant, and that the complainant is unable to procure the papers so as to perfect his chain of title, and cannot therefore safely go to trial at law without a discovery from the defendant.

These various charges were obviously made as the ground of a prayer for a discovery. They have been directly and explicitly denied by the answer of the defendant. He denies that any deed of conveyance for the premises was ever executed by his father or mother, or by himself or by his attorney ; that no such papers were ever in his possession or under his control or within his knowledge. So far as the answer relates to the defendant's own deed or power of attorney, or facts within his knowledge, it is a full answer to the equity of the bill. So far as it relates to the execution of a conveyance by the mother, it does not fully answer the equity of the bill, for the fact is not within his knowledge. His mother died before the defendant was two years old, and in denying the execution of a conveyance by her, he could only

have spoken as to his belief, not from his knowledge. A mere formal or technical denial of the charges of the bill is. not, as of course, sufficient to dissolve the injunction.

If the defendant's case rested upon the answer above, or if there was any fact or circumstance in the case to warrant the belief, or to create an impression that the mother had conveyed her estate, I should retain the injunction to the hearing. But there is the strongest reason for believing that no such conveyance was ever made. In the releases executed by Peter Sexton and his brother, upon the partition of the land between them in 1803, it is recited that Peter had purchased his sister's share *from her husband.* There is no suggestion that she had joined in the deed—and this was some years subsequent to her death. And it is averred, in the bill of complaint, that the husband did, after the death of the defendant's mother, convey all his interest and all his son's interest in his mother's share of the estate to the complainant with covenants of general warranty, and that at the same time he, with his father, gave to Peter Sexton a bond of indemnity against any claim which the son might thereafter make for the estate of his mother. Why this conveyance with covenants of warranty from the husband, and this bond of indemnity against the claim of the child, if the mother had ever divested herself of his estate?

That part of the bill which seeks to raise an equity against the defendant, upon the ground that he received from his father and grandfather, for his support and maintenance, a sum equal to the value of the land, is fully met and denied by the answer. If it were otherwise, and the facts were admitted to be true as charged, they would not avail to destroy the defendant's title or prevent a recovery in ejectment, whatever equity they might raise in favor of the complainant for an account.

Nor will the fact that the complainant's title was on record charge the defendants with a knowledge of his title, or subject him or his estate to any equity in favor

of the defendant, on the ground that his claim was not earlier made known to the complainant, or sought to be enforced against him.

Nor can the staleness of the claim or the lapse of time, or the statute of limitations, avail the complainant. The *defendant* is asking no relief at the hands of this court. He was seeking to enforce his legal rights in a court of law. The complainant is here asking the aid of this court. It is the claim of the complainant, not the title of the defendant, to which the equitable defence of a stale claim is applicable. No lapse of time can avail the complainant, unless it be a bar to the defendant's title under the statute of limitations. This defence will avail the defendant at law as well as in equity, and constitutes no ground for enjoining proceedings at law.

I find no ground on which to continue the injunction, nor do I see, in any aspect of the case, that its continuance can be of any avail to the complainant. He has had all the benefit of a discovery from the defendant that he can have. Every presumption in favor of his title which he can have in this court he can have at law. The statute of limitation will avail him there as well as here, and a further continuance of the injunction can only serve to procrastinate the cause, which has already been long delayed.

The injunction should be dissolved without costs.